1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE MARSHA J. PECHMAN

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON

EMMA ALVARADO, individually and on behalf of all others similarly situated,

Plaintiff,

v.

MICROSOFT CORPORATION, a Washington corporation; and DOES 1 through 100, inclusive,

Defendants.

NO.  C09-189 MJP

PLAINTIFF'S RESPONSE TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

PLAINTIFF'S RESPONSE TO DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
CASE No. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

# TABLE OF CONTENTS

Page No.

I.    INTRODUCTION ................................................................................................ 1

II.   STANDARD OF REVIEW ................................................................................. 2

III.  STATEMENT OF FACTS ................................................................................. 3

IV.   ARGUMENT ...................................................................................................... 8

      A.   The Indirect Purchaser Rule Does Not Bar Plaintiff's Claims ........................... 8

           1.   Microsoft imposed its unfair "downgrade rights" scheme
                directly on Plaintiff and the other class members through
                its EULA ................................................................................................ 8

           2.   The indirect purchaser rule applies to fixed prices – not
                forced purchases ..................................................................................... 9

           3.   Plaintiff's "direct" purchase of her PC does not bar her claims ........... 11

      B.   Plaintiff Has Stated A Claim For Unfair Business Practices Under
           The Washington Consumer Protection Act ....................................................... 12

           1.   The Washington Consumer Protection Act Independently
                Prohibits Unfair Acts or Practices Without the Requirement
                of Deception .......................................................................................... 12

                a.   Substantial injury ...................................................................... 13

                b.   Countervailing Benefits ............................................................ 13

                c.   Reasonable Avoidance .............................................................. 14

           2.   Microsoft's Downgrade Rights Scheme Independently
                Violates the CPA Because it Causes Retail Price Inflation ................. 14

           3.   The Court Should Reject Microsoft's Other Erroneous Arguments .... 16

      C.   Plaintiff Has Stated A Claim For Unjust Enrichment ...................................... 17

           1.   Plaintiff Conferred a Benefit on Microsoft by Paying for an
                Operating System She Did Not Want or Need ..................................... 17

           2.   Microsoft is Aware that it Benefits from its Unfair Scheme ............... 19

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - i
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington 98103
TEL. 206.816.6603 ● FAX 206.350.3528

1

2
3.    Microsoft Unjustly Retained Monies Paid by Consumers
for Operating Systems They Did not Want ........................................... 19

3
D.    Plaintiff Has Stated A Claim For Declaratory Relief ....................................... 20

4
V.    CONCLUSION ......................................................................................................... 20

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - ii
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1

# TABLE OF AUTHORITIES

2

**Page No.**

3

## FEDERAL CASES

4

*Ashcroft v. Iqbal*, --- U.S. ----,

5     129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)...............................................................9

6     *Bell Atlantic Corp. v. Twombly*,

7     550 U.S. 544 (2007) ...............................................................................................9

8     *Consol. Dairy Prods. Co. v. Bar-T Ranch Dairy, Inc.*,
      97 Wn.2d 167 (1982)............................................................................................16

9     *Hansen v. Department of the Treasury*,

10    528 F.3d 597 (9th Cir. 2007) ..................................................................................2

11    *In re Cardizem CD Antitrust Litig.*,

12    105 F. Supp. 2d 618 (E.D. Mich. 2000) .........................................................18, 19

13    *Kelley v. Microsoft Corp.*,
      No. C07-0475, 2009 WL 413509 (W.D. Wash. Feb. 18, 2009)........................15

14    *Kelley v. Microsoft Corp.*,

15    251 F.R.D. 544 (W.D. Wash. 2008) ....................................................................14

16    *Kelley v. Microsoft Corp.*,

17    2009 WL 973368 (W.D. Wash. Apr. 10, 2009) .................................................17

18    *Kreidler v. Pixler*,

19    No. C06-0697RSL, 2006 WL 3539005 (W.D. Wash. Dec. 7, 2006)................18

20    *Illinois Brick Co. v. Illinois*,
      431 U.S. 720 (1977) .............................................................................................16

21    *Moss v. U.S. Secret Serv.*,

22    572 F.3d 962 (9th Cir. 2009) ..................................................................................9

23    *Muehlbauer v. General Motors Corp.*,

24    431 F. Supp. 2d 847 (N.D. Ill. 2006)................................................................18, 19

25    *New York v. Microsoft Corp.*,
      209 F. Supp. 2d 132 (D.D.C. 2002)....................................................................10

26

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - iii
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington 98103
TEL. 206.816.6603 • FAX 206.350.3528

*Orient Maritime Ltd. v. SSA Int'l, Inc.*,
    No. C05-1100L, 2005 WL 3448068 (W.D. Wash. Dec. 14, 2005)...................................19

*Swartz v. KPMG, LLP*,
    476 F.3d 756 (9th Cir. 2007) ................................................................................................2

*United States v. Microsoft Corp.*,
    87 F. Supp. 2d 30 (D.D.C. 2000)........................................................................................10

*Watkins v. Peterson Enters., Inc.*,
    57 F. Supp. 2d 1102 (E.D. Wash. 1999) .............................................................................12

**STATE CASES**

*Balie Communications Ltd. v. Trend Bus. Sys. Inc.*,
    61 Wn. App. 151, 810 P.2d 12 (1991)................................................................................17

*Blewett v. Abbott Laboratories*,
    86 Wn. App. 782, 938 P.2d 842 (1997)...........................................................1, 2, 9, 10, 11

*Camacho v. Auto Club of S. Cal.*,
    142 Cal. App. 4th 1394, 48 Cal. Rptr. 3d 770 (2006) ........................................................13

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wn.2d 778, 719 P.2d 531 (1986) .................................................................................12

*Panag v. Farmers Ins. Co. of Washington*,
    166 Wn.2d 27, 204 P.3d 885 (2009) .......................................................................12, 13, 15

**FEDERAL STATUTES**

15 U.S.C. § 45(n).............................................................................................................................13

**STATE STATUTES**

RCW 19.86.020 ....................................................................................................................9, 10, 12

**FEDERAL RULES**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................2, 3

**OTHER AUTHORITIES**

Restatement (First) of Restitution § 1 (1937).................................................................................17

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington 98103
TEL. 206.816.6603 • FAX 206.350.3528

Statements of General Policy or Interpretation Staff Commentary on the Fair ..Debt Collection Practices Act, 53 Fed. Reg. (Dec. 13, 1988) ............................................................................... 13

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - v
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 ● FAX 206.350.3528

# I. INTRODUCTION

Defendant Microsoft Corporation ("Microsoft") begins its motion to dismiss by asserting that Plaintiff's Second Amended Complaint ("SAC") "plead(s) around the indirect purchaser rule announced in *Blewett v. Abbott Laboratories*, 86 Wn. App. 782, 938 P.2d 842 (1997)" (Motion at 1:2-4) and, indeed, Microsoft is correct in this assertion. After reviewing Microsoft's motion to dismiss the First Amended Complaint, Plaintiff was concerned that Microsoft misunderstood the basis for her claims and wished to avoid similar confusion on the part of the Court. As a result, Plaintiff volunteered to file a Second Amended Complaint in order to clarify the basis for her claims and eliminate the apparent confusion on Microsoft's part. Unfortunately, notwithstanding Plaintiff's best efforts in this regard (including the elimination of her anti-competition claim under the Unfair Business Practices Act, the deletion of all charging allegations related to anti-competitive conduct, Microsoft still seems to think (or wants the Court to believe for purposes of its motion to dismiss) that Plaintiff is alleging that Microsoft has engaged in anti-competitive activities that have resulted in charges being passed through to her as an indirect purchaser of a Microsoft product. But, that is not what Plaintiff alleges, and that is not what this case is about at all.

In this case, Plaintiff was the purchaser of a personal computer ("PC") from Lenovo, an original equipment manufacturer ("OEM"). Plaintiff's preferred operating system for her PC was Microsoft Windows XP ("Windows XP"). Microsoft mandated that in order for Plaintiff to obtain Windows XP she must first purchase a PC with the most current version of its Microsoft operating system – in Plaintiff's case, the Windows Vista Business operating system ("Vista Business") – and then "downgrade" to Windows XP. "Downgrade rights" are an end-user right and are documented in Microsoft's End-User License Agreement ("EULA") for Vista. Therefore, only after Plaintiff accepted the EULA for Vista Business did she become eligible to exercise her right to downgrade to Windows XP. In short, Plaintiff accepted the terms of the EULA for Vista not because she wanted to, but because she was required to do so

1  in order to be able to "downgrade" to the operating system that she actually wanted – namely,

2  Windows XP.  As a result, Plaintiff was forced to effectively "purchase" (technically,

3  "license") two operating systems for her PC when she only needed and/or wanted one.  And, to

4  make matters worse, Plaintiff was forced to purchase/license a premium, more expensive

5  version of the operating system that she never wanted in the first place (Vista Business) in

6  order to be able to downgrade to the operating system that she wanted (Windows XP).

7       Microsoft's undisputed monopoly position in the PC software market has enabled it to

8  force Plaintiff (and millions of other consumers) to make this needlessly duplicative and

9  unnecessary purchase of software.  However, Plaintiff is not alleging a vertical price-fixing

10  conspiracy that results in an overcharge being "passed through" to "indirect purchaser"

11  consumers by direct purchaser retailers or distributors as occurred in *Blewett*.  Rather, Plaintiff

12  alleges that Microsoft's conduct constitutes an unfair business practice that is injurious to

13  consumers because it: (1) forces consumers to purchase two operating systems when they only

14  need and/or want one; and (2)  results in unnecessary retail price inflation in the market for

15  PCs.  That is what Plaintiff alleges, and that is what this case is all about.  That is what Plaintiff

16  alleges, and that is what this case is all about.

## II.  STANDARD OF REVIEW

18       Microsoft has moved to dismiss the Second Amended Complaint under Rule 12(b)(6) of

19  the *Federal Rules of Civil Procedure* for failure to state a claim upon which relief may be

20  granted.   In deciding a Rule 12(b)(6) motion, the Court must accept the complaint's allegations

21  as true and construe them in the light most favorable to the nonmoving party.  *Hansen v.*

22  *Department of the Treasury*, 528 F.3d 597, 599 (9th Cir. 2007).  "The issue is not whether a

23  plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

24  the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and

25  unlikely but that is not the test."  *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

26

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 2
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1     Recently, the United States Supreme Court has issued two decisions clarifying the

2  standards to be applied by the district courts in ruling on motions to dismiss under Rule

3  12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court

4  concluded that "[d]ismissal is appropriate where a complaint fails to allege enough facts to state

5  a claim to relief that is plausible on its face." *Id.* at 570.  Correspondingly, in *Ashcroft v. Iqbal*,

6  --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained that a

7  complaint withstands the plausibility test "when the plaintiff pleads factual content that allows

8  the court to draw the reasonable inference that the defendant is liable for the conduct alleged."

9  *Id.* 129 S. Ct. at 1949, citing *Twombly*, 550 U.S. at 556.; *see also Moss v. U.S. Secret Serv.*, 572

10  F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949) ("In sum, for a complaint to

11  survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences

12  from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.").  As

13  demonstrated herein, the allegations in Plaintiff's Second Amended Complaint satisfy the

14  plausibility standards enunciated by the courts in *Twombly*, *Iqbal* and *Moss*.

## III.  STATEMENT OF FACTS

16     Plaintiff purchased a Thinkpad X61 laptop computer from Lenovo, for her own

17  personal use and not for resale.  To obtain the Windows XP operating system that she wanted

18  on her laptop, Plaintiff was required to purchase a computer that included a license for Vista

19  Business – one of Microsoft's most expensive operating systems and one that Plaintiff did not

20  need or desire – in order to "downgrade" to Windows XP Professional.  (SAC, ¶ 4.)

21     Microsoft is a computer technology corporation that develops, manufactures, licenses,

22  and supports a wide range of software products for PCs.  Microsoft's flagship products, the

23  Windows operating systems, are used on more than 90 percent of Intel-based PCs, the

24  dominant type of PC in the United States.  The operating system is the most important program

25  on a PC.  Every PC must have an operating system to run other programs.   (SAC, ¶ 8.)

26  Microsoft possesses (and for several years has possessed) monopoly power in the market for

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 3
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1    PC operating systems.  See, *United States v. Microsoft Corp.*, 87 F. Supp. 2d 30 (D.D.C. 2000);

2    *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132 (D.D.C. 2002).

3         The primary channel through which Microsoft distributes its Windows operating

4    systems is pre-installation on new PCs by PC manufacturers (referred to as "OEMs"). Because

5    a PC can perform virtually no useful tasks without an operating system, OEMs consider it a

6    commercial necessity to preinstall an operating system on the PCs they sell.  And because there

7    is no viable competitive alternative to the Windows operating system for PCs, OEMs consider

8    it a commercial necessity to preinstall Windows operating systems on their PCs.  (SAC, ¶ 9.)

9         Both OEMs and Microsoft recognize that consumers have no commercially viable

10   substitute for Windows, and OEMs cannot preinstall Windows on their PCs without a license

11   from Microsoft. Because nearly all PCs in the United States are shipped with a copy of

12   Windows preinstalled, *Microsoft has dictated the terms of the use of its Windows operating*

13   *systems by consumers – referred to as "End Users" – through its End User License*

14   *Agreements ("EULA") and imposes licensing terms that restrict which versions of Windows*

15   *may be sold on PCs*.  (SAC, ¶ 10.)

16        On or about January 30, 2007, Microsoft publicly released the first version of the

17   Windows Vista operating system ("Vista") – the long-awaited successor to the Windows XP

18   operating system.  During the succeeding two years, Microsoft released multiple versions of

19   Vista – including Vista Home Premium, Vista Business and Vista Ultimate.  Vista Business

20   and Vista Ultimate are higher-priced versions of Vista that include specialized applications.

21   Vista Business costs up to $100 more than Vista Home Basic; Vista Ultimate costs up to $200

22   more than Vista Home Basic.  (SAC, ¶ 29.)

23        When Microsoft first launched Vista, it required OEMs to pre-install Vista onto their

24   PCs and to sell the PCs to consumers for a single price that included the pre-installed Vista.  As

25   the sole licensor of Vista, Microsoft enjoys vast power over OEMs.  As a result, during the

26

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 4
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 ● FAX 206.350.3528

1    initial period of time after Vista's launch, Microsoft forced OEMs to significantly curtail their

2    sales of PCs pre-installed with the Windows XP.  (SAC, ¶ 30.)

3        The public's reaction to the launch of Vista was not favorable.  Consumers reported

4    numerous problems using Vista, and these problems were and continue to be widely publicized

5    in various media outlets.  Among the problems cited have been Vista's heavy horsepower

6    requirements, its intrusive security measures and its incompatibility with older legacy

7    applications.  In response to the public's dissatisfaction with Vista, Microsoft decided to grant

8    consumers who purchased a new PC with Vista the right to "downgrade" the operating-systems

9    software from Vista to Windows XP.   (SAC, ¶ 31.)

10       Initially, Microsoft made this "downgrade" right from Vista available to consumers for

11   a limited period of time, then until June 30, 2008.  Subsequently, Microsoft extended the time

12   period until January 31, 2009, then until July 31, 2009, and then until October 21, 2009 – that

13   is, until the time that Microsoft replaced Vista with Windows 7.   Microsoft has continued the

14   same "downgrade rights" scheme with Windows 7, under the moniker "Windows 7 Downgrade

15   Rights," effective from October 22, 2009 until at least April 1, 2011.  (SAC, ¶¶ 14, 32.)

16       Microsoft's "downgrade rights" policies state: "The right to downgrade is an end-user

17   right [documented in the EULA]…The End User must provide the downgrade media and a

18   valid Product Key…"  These policies also state that: "A System Builder (when authorized by

19   the end user), or the end user [may install the Downgrade Software [for Windows XP]].

20   *Because downgrade rights are an end user right granted in the end user license agreement*

21   *(EULA), the end user must first be able to accept the EULA associated with the software [Vista,*

22   *and now Windows 7], so this software must be installed first before the Downgrade Software is*

23   *installed.*"  (SAC, ¶ 33.)  This process is further defined in Microsoft's Desktop Operating

24   System License Agreement ("DTOS").  The downgrade media [Windows XP] must be

25   supplied to the OEM by the End User and must come from a legally licensed version of

26   Microsoft retail, OEM/System Builder, or Volume License channels.  (SAC, ¶ 12.)

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 5
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1

2          Although many consumers would prefer to purchase a new PC pre-installed with

3   Windows XP or at least not pre-installed with Vista or Windows 7, Microsoft has used its

4   monopoly position in the PC operating systems market to take advantage of consumer demand

5   for Windows XP by requiring consumers to purchase a PC that includes a license for the use of

6   Vista or Windows 7 and to pay money to downgrade to Windows XP Professional, using

7   downgrade media provided by the consumer at the consumer's cost.  To make matters worse,

8   Microsoft requires consumers to purchase a PC that includes a license for either Vista Business

9   or Vista Ultimate – and now Windows 7 Professional or Windows 7 Ultimate – versions of the

10  operating systems that: (a) are premium, more expensive versions of the home versions of the

11  same operating systems: and (b) include specialized applications that are neither needed nor

12  wanted by an ordinary consumer seeking to purchase a PC primarily for personal, non-business

    use.  (SAC, ¶ 34.)

13         Plaintiff alleges that Microsoft conceived and implemented the "right" for consumers to

14  "downgrade" to  Windows XP Professional in order to: (a) maintain and/or inflate its sales

15  figures for, and profits from, sales of Vista and Windows 7 (particularly the Vista Business,

16  Vista Ultimate, Windows 7 Professional and Windows 7 Ultimate versions) because Microsoft

17  includes in its sales figures all sales of pre-installed Vista and Windows 7 – even those that, at

18  the time of sale to the End User/consumer, have been "downgraded" to Windows XP

19  Professional and thus never were used or intended to be used by the consumer; and (b) recoup

20  its investment in developing and producing Vista and Windows 7 by forcing consumers to

21  purchase the premium, more expensive versions of Vista and Windows 7 (Vista Business, Vista

22  Ultimate, Windows 7 Professional, and Windows 7 Ultimate) in order to "downgrade" to

23  Windows XP.   (SAC, ¶¶ 32, 35.)

24         In response to the high demand for downgrades, Microsoft eventually permitted its

25  OEMs to perform downgrades for the End User/consumer by installing Windows XP directly at

26  the factory.  OEMs have charged consumers a range of fees to cover the full cost of the

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

downgrading. For example, in December 2008, Dell was charging consumers a total of $150 to downgrade from Vista Home Premium to Windows XP Professional. When challenged regarding the reasonableness of the amount of its downgrade fee, Dell responded that only $20 of the fee was attributable to the actual price of Windows XP. The other $130 was the cost of complying with Microsoft's requirement that, prior to downgrading to Windows XP Professional, the standard Vista operating system first must be replaced with either Vista Business or Vista Ultimate. In other words, prior to permitting the consumer to "downgrade" to Windows XP Professional, Microsoft first mandates that the consumer "upgrade" from the basic versions of Vista or Windows 7 to Vista Business, Vista Ultimate, Windows 7 Professional or Windows 7 Ultimate – thereby forcing the consumer to incur an unnecessary expense and creating revenue for Microsoft by virtue of the End User/ consumer purchasing two operating systems for one PC. (SAC, ¶ 36.)

The PC operating systems market is estimated to be worth more than $50 billion annually in the U.S. alone. As of October 2009, Microsoft controlled approximately 90 percent of that market. On July 18, 2008, Microsoft announced that it had sold more than 180 million Vista licenses, which equates to gross sales revenues of between 30 and 60 billion dollars from Vista licenses. These figures include Vista licenses that have been downgraded to Windows XP. (SAC, ¶ 38.)

During the past two years, approximately 35 percent of the consumers purchasing a new PC have paid to downgrade the operating system from Vista to Windows XP. In doing so, consumers have been forced by Microsoft to purchase two operating systems – one for which they have no use and likely will never use (Vista) and one which they desire to use (Windows XP) but are forced to obtain via a "downgrade." And because Microsoft has mandated that downgrade "rights" apply only to Vista Business and Vista Ultimate (and now Windows 7 Professional an Windows 7 Ultimate), Microsoft's mandate has artificially inflated the demand for Vista Business and/or Vista Ultimate by approximately 54 percent, attributable to those

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 7
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

consumers who purchased Vista Business or Vista Ultimate solely to be able to downgrade to Windows XP. The same will hold true for Windows 7 Professional and Windows 7 Ultimate. (SAC, ¶ 39.)

Plaintiff and the other members of the Class have suffered injury to their property as a result of Microsoft's unfair downgrade rights scheme because they have been forced to purchase Vista or Windows 7 in order to obtain and use the Windows XP. As a result, Plaintiff and the other members of the Class are forced to pay more for a PC than they otherwise would have to pay due to the retail price inflation that is directly attributable to Microsoft's requirement that the End User/consumer purchase two operating systems for one PC. (SAC, ¶ 40.)

Plaintiff and the other members of the Class also have suffered injury to their business and property as a result of Microsoft's unfair downgrade rights scheme because, owing to Microsoft's undisputed monopoly position in the PC operating systems market, they have been, and continue to be, forced to pay substantially more to acquire Windows XP than they would have to pay in a competitive marketplace in which there were available alternative PC operating systems. (SAC, ¶ 41.)

## IV. ARGUMENT

**A.    The Indirect Purchaser Rule Does Not Bar Plaintiff's Claims**

1.    <u>Microsoft imposed its unfair "downgrade rights" scheme directly on Plaintiff and the other class members through its EULA</u>

Microsoft imposed its EULA for Vista directly on Plaintiff, who was required to agree to its terms in order to obtain and use Windows XP. Plaintiff had little choice but to do so, given Microsoft's dominating position in the PC operating systems market and her need for an operating system on her PC. Microsoft's unilaterally imposed EULA forced Plaintiff to purchase a premium version of Vista before purchasing and installing Windows XP.

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

Although Microsoft argues that Plaintiff indirectly purchased her operating systems and associated licenses from the OEM, Microsoft cannot deny that it imposed its EULA directly on Plaintiff. That EULA is a contract between Microsoft and Plaintiff. The OEM is not a party to the EULA. Consumers such as Plaintiff enter into the EULA with Microsoft by hitting the "I accept" tab when configuring their PCs after purchase. Plaintiff had no choice but to accept Microsoft's terms. Otherwise, her PC would have no operating system and would not function. The downgrade media [Windows XP] must be supplied to the OEM by the End User and must come from a legally licensed version of Microsoft retail, OEM/System Builder or Volume License channels. (SAC, ¶ 12.) Thus, Microsoft imposed its unfair downgrade rights scheme *directly* on Plaintiff through its EULA – *not indirectly* through the OEM.

2. The indirect purchaser rule applies to fixed prices – not forced purchases

Microsoft argues that *Blewett v. Abbott Laboratories,* 86 Wn. App. 782, 938 P.2d 842 (1997) bar Plaintiff's claims in this action – irrespective of how Plaintiff alleges them – because Plaintiff is an indirect purchaser of the Microsoft software at issue. However, the facts of *Blewett*, when juxtaposed with the facts underlying Plaintiff's claims, demonstrate that *Blewett* is distinguishable and therefore not controlling.

In *Blewett*, the plaintiff alleged that major drug manufacturers acted under a mutual understanding (*i.e.* conspiracy) to sell drugs to local pharmacies at higher prices than they sold the same drugs to HMO outlets and mail-order pharmacies. The plaintiff claimed that the defendant manufacturers' acts resulted in illegal overcharges for prescription brand-name drugs purchased from local pharmacies and drug stores. The plaintiff further alleged that the discriminatory pricing scheme was not justified by differences in costs, sales methods, or quantities sold, and therefore constituted horizontal price fixing. The plaintiff brought claims against the manufacturers for (1) an unfair combination in restraint of trade, in violation of the Washington Consumer Protection Act (the Act), RCW 19.86.030, and (2) an unfair trade practice, in violation of RCW 19.86.020. *Id.* at 784.

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 9
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington 98103
TEL. 206.816.6603 • FAX 206.350.3528

The *Blewett* court examined *Illinois Brick Co. v. Illinois,* 431 U.S. 720 (1977), and held that indirect purchasers of price-fixed goods do not have standing to sue for antitrust violations under the Act.  86 Wn. App. at 786-88.  The *Blewett* court cited the three policy reasons articulated in *Illinois Brick*:

- ▪ First, allowing direct purchasers to recover for the full overcharge concentrates their claims, resulting in more rigorous private enforcement of the antitrust laws.

- ▪ Second, forbidding suites by indirect purchasers avoids the evidentiary complexities and uncertainties in proving the passing on of injuries in the real economic world rather than an economist's hypothetical model.

- ▪ Third, forbidding suits by indirect purchasers protects defendants from multiple liability to indirect and direct purchasers.

*Id.* at 785-86.

In *Blewett*, the plaintiff indirectly purchased the overpriced drugs from the pharmacies – not from the drug manufactures.  Thus, the plaintiff lacked standing to sue for a combination in restraint of trade under RCW 19.86.030.  *Id.* at 789.  The *Blewett* court also held that the plaintiff's unfair-trade-practice claim under RCW 19.86.020 was a restraint of trade claim under a different label and, therefore, similarly barred.  *Id.*

Here, by contrast, Plaintiff does not allege price fixing that results in an overcharge being passed through to her as the end use, "indirect" purchaser.  Rather, Microsoft forces end-user consumers to purchase one operating system (Vista) in order to be able to downgrade to the operating system (Windows XP) that the consumer actually wants.  In this sense, Microsoft's conduct is analogous to a drug manufacturer forcing consumers to buy an unwanted and unneeded drug in order to obtain the medication that they actually need and want.

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 10
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

3. <u>Plaintiff's "direct" purchase of her PC does not bar her claims</u>

Microsoft's argument that Plaintiff directly purchased her PC – and her operating-system license – from the OEM and, by inference, therefore, purchased her operating system license from Microsoft "indirectly" is simply incorrect.  The OEM preloaded Plaintiff's PC with an operating system subject to Microsoft's EULA.  But, the EULA had no validity until Plaintiff accepted its terms, and the OEM was not a party to the EULA.  In fact, Microsoft's "downgrade rights" policies explicitly excludes the OEM as a party:

> The right to downgrade is an end-user right [documented in the EULA]…The End User must provide the downgrade media and a valid Product Key…A System Builder (when authorized by the end user), or the end user [may install the Downgrade Software [for XP]]. Because downgrade rights are an end user right granted in the end user license agreement (EULA), the end user must first be able to accept the EULA associated with the software [Vista, and now Windows 7], so this software must be installed first before the Downgrade Software is installed.

(SAC, ¶ 33.)

This process is further defined in Microsoft's DTOS. The downgrade media [Windows XP] must be supplied to the OEM by the End User and must come from a legally licensed version of Microsoft retail, OEM/System Builder, or Volume License channels. (SAC, ¶ 12.)

Microsoft's EULA makes clear that the end user must *first* accept the EULA associated with the unwanted operating system (Vista or Windows 7).  Microsoft thus forces the end user to *first* purchase and install Vista or Windows 7 before obtaining and installing Windows XP. Consequently, the three *Illinois Brick* policy reasons cited by *Blewett* do not apply to the facts of this case given that:

▪   First, only Plaintiff (not the OEM) suffered damages by having to pay for two operating systems.  Microsoft *directly* imposed its downgrade scheme in its EULA on Plaintiff – not on the OEM. End users such as Plaintiff suffer the full measure of damages from Microsoft's unfair downgrade rights scheme and are the logical parties to rigorously enforce the RCW.

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

▪ Second, Plaintiff's damages are not hypothetical or complex.  Microsoft, through its EULA, forced Plaintiff to pay for two operating systems.  This was not a passed-on injury.

▪ Third, Microsoft is not potentially liable both to Plaintiff and to the OEM.  *The OEM does not have standing to sue because it is not a party to the EULA, and suffered no resulting damage.*  If Plaintiff cannot sue, then nobody can.

**B.  Plaintiff Has Stated A Claim For Unfair Business Practices Under The Washington Consumer Protection Act**

1.  The Washington Consumer Protection Act Independently Prohibits Unfair Acts or Practices Without the Requirement of Deception

The Washington Consumer Protection Act ("CPA") broadly prohibits any unfair or deceptive acts or practices.  *See* RCW 19.86.020.  To state a CPA claim, a plaintiff must show: (1) that the defendant engaged in an unfair or deceptive act; (2) that the act occurred in the conduct of the defendant's trade; (3) that the practice affected the public interest; (4) that the plaintiff was injured; and (5) that the defendant's act or practice was the proximate cause of the plaintiff's injury.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 787-93, 719 P.2d 531 (1986).  Here, Microsoft wrongly asserts that Plaintiff has not established the first prong of the *Hangman Ridge* test – namely, that Microsoft engaged in an unfair or deceptive act.

As Microsoft's own authority clearly establishes, to be actionable under the CPA, a practice need not be both "unfair" and "deceptive", as each provides an independent ground for a claim for relief under the CPA.  *See Watkins v. Peterson Enters., Inc.,* 57 F. Supp. 2d 1102, 1111 (E.D. Wash. 1999) (noting that the terms unfair and deceptive are separate concepts).  In fact, Washington courts have found that "[t]he universe of 'unfair' business practices is broader than, and encompasses, the universe of 'deceptive' business practices."  *Panag v. Farmers Ins. Co. of Washington*, 166 Wn.2d 27, 51, 204 P.3d 885 (2009).  Because Plaintiff need not establish that a practice is deceptive in order to state a CPA claim, Microsoft's assertion that Plaintiff's Second Amended Complaint "contains only a single conclusory allegation of deception" is irrelevant.  (Motion at 12:20-25.)  Plaintiff's CPA claim is not predicated on

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 12
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1   consumers being *deceived*; rather, it is predicated on the *unfairness* of Microsoft's business

2   practice.[1]

3   Under Washington law, a practice is unfair if it: (1) causes substantial injury to the

4   consumer; (2) is not outweighed by countervailing benefits to consumers or competitors; and

5   (3) is not reasonably avoidable by the consumer.  *See Panag*, 166 Wn.2d at 51 (citing *Camacho*

6   *v. Auto Club of S. Cal.,* 142 Cal. App. 4th 1394, 48 Cal. Rptr. 3d 770 (2006)); *see also*

7   Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection

8   Practices Act, 53 Fed. Reg. at 50,097, 50,107 (Dec. 13, 1988)).  In this case, Plaintiff's Second

9   Amended Complaint plainly sets forth facts demonstrating that Microsoft's conduct is an unfair

10  business practice.

11                  a.    *Substantial Injury*

12  "In most cases a substantial injury involves monetary harm, as when sellers coerce

13  consumers into purchasing unwanted goods or services."  *See* FTC's 1980 Policy Statement at

14  3, 104 F.T.C. 949, 1070 (1984); codified in a 1994 amendment to 15 U.S.C. § 45(n).  In the

15  Second Amended Complaint, Plaintiff alleges that Microsoft coerced her into buying the Vista

16  or Windows 7 operating system so that she could then downgrade to the Windows XP

17  operating system, thereby forcing her to purchase two operating systems for her PC when she

18  only needed and/or wanted one.   (SAC, ¶¶ 34, 37, 40, 45, 46, and 48.)  Plaintiff further alleges

19  that Microsoft forced consumers to purchase the more expensive or "premium" version of the

20  Vista or Windows 7 operating system in order to be able to downgrade to Windows XP.  (SAC,

21  ¶¶ 34, 36, 39, 41, 45, 46, and 48.)   This conduct injured Plaintiff because it forced her to

22  purchase two operating systems when she only needed and wanted one.

23  ───────────────

24  [1] Moreover, despite Microsoft's assertions to the contrary, Plaintiff does not allege a *per se* violation of the CPA
    (which eliminates Microsoft's argument at B.2 in its Motion at 13:8-19) nor does she allege an antitrust claim
    tying the "unfair" practice to unfair competition (which eliminates Microsoft's arguments relating to anti-

25  competitive conduct discussed at B.3. in its Motion at 14:13-17:9). Plaintiff does not accuse Microsoft of using its
    monopoly position to set monopolistically high prices.  In fact, Plaintiff *does not take issue with the prices of Vista*

26  *or Windows XP.  She takes issue with having to buy both when she only needs one.*

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 13
CASE NO. C09-0189 MJP

**TERRELL MARSHALL & DAUDT PLLC**
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

b.     *Countervailing Benefits*

There are no countervailing benefits to consumers or competition that outweigh Microsoft's unfair conduct.     In fact, even Microsoft does not assert that there are *any* countervailing benefits to consumers or competition from this practice.

c.     *Reasonable Avoidance*

Finally, consumers could not reasonably have avoided injury from Microsoft's conduct. Microsoft required Plaintiff to purchase Vista in order to downgrade to the Windows XP. (SAC, ¶46.)  It was Microsoft's mandate that caused the injury to Plaintiff's property, and there was no reasonable means for Plaintiff to avoid the injury.

For all of the above reasons, Plaintiff has stated a claim for relief under the CPA's "unfairness" prong.

2.     <u>Microsoft's Downgrade Rights Scheme Independently Violates the CPA Because it Causes Retail Price Inflation</u>

In addition to Plaintiff's claim that Microsoft's practice of forcing consumers to purchase two operating systems is generally unfair and a violation of the CPA, Plaintiff also avers that Microsoft's practice led to retail price inflation of the Vista operating system software which is an independent violation of the CPA.

As this court recognized in *Kelley v. Microsoft Corp.*, 251 F.R.D. 544, 559 (W.D. Wash. 2008), a CPA claim can be asserted where a plaintiff alleges that s/he paid more for a product than s/he otherwise would have paid, but for the artificially created demand by the defendant.  Here, as in *Kelley*, Microsoft artificially created an increased demand for Vista by forcing consumers to purchase Vista when they did not want or need it.  This conduct artificially inflated the demand for Vista Business and/or Vista Ultimate by approximately 54 percent.  (SAC, ¶ 39.)

Plaintiff's Second Amended Complaint sets forth facts demonstrating that Microsoft's retail price inflation scheme is unfair because: (1) it caused substantial injury; (2) there are no

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 14
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

countervailing benefits; and (3) Plaintiff could not reasonably avoid the injury. *See Panag*, 166 Wn.2d at 51. With regard to the "substantial injury" element, Microsoft's conduct results in retail price inflation because it artificially increases sales of the Vista – sales that would not have occurred but for Microsoft's requirement that consumers purchase the Vista in order to downgrade to Windows XP. (SAC, ¶¶ 39-40.) This scheme resulted in substantial injury to Plaintiff because she paid more for a PC than she would have otherwise paid absent the retail price inflation. (SAC, ¶¶ 37 and 40.) No countervailing benefits to consumers or competition outweigh Microsoft's unfair conduct that creates this retail price inflation. Again, Microsoft does not assert *any* countervailing benefits to consumers or competition from the retail price inflation. Rather, Microsoft simply forced Plaintiff to pay more than she otherwise would have paid. (SAC, ¶ 48.) Finally, Plaintiff could not have reasonably avoided the effect of the retail price inflation because Microsoft required her to purchase Vista in order to downgrade to Windows XP. (SAC, ¶ 46.) Microsoft's undisputed monopoly power prevented Plaintiff from purchasing an alternate operating system.

Plaintiff's case is analogous to the *Kelley* case. In *Kelley*, this court found that common issues could predominate as to whether Microsoft's "marketing campaign inflated demand market-wide." *See Kelley v. Microsoft Corp.*, No. C07-0475, 2009 WL 413509, at 5 (W.D. Wash. Feb. 18, 2009). Plaintiff is aware that this court decertified the class in *Kelley*, but notes that the individual CPA claim still stands. *Id.* at 9. Here, as in *Kelley*, Plaintiff paid more for a PC than she otherwise would have paid, but for Microsoft's scheme, thereby resulting in "retail-price inflation." (SAC, ¶¶ 37 and 40.)

For these reasons, Plaintiff has stated a claim for retail price inflation as an independent CPA violation. Therefore, Microsoft's motion to dismiss the CPA claim should be denied.

3.    The Court Should Reject Microsoft's Other Erroneous Arguments

Microsoft maintains that anti-competitive conduct that does not violate the antitrust provisions of the CPA cannot be actionable as "unfair." (Motion at 14:22-23.) Microsoft

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 15
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1   provides no legal authority for this proposition.  Instead, Microsoft relies on a legislative

2   declaration that "anti-competitive conduct is unfair," providing no support for its subsequent

3   conclusion that anti-competitive conduct is the only conduct actionable as unfair under the

4   CPA.  Here, Plaintiff simply alleges that Microsoft engaged in a pattern of conduct that was

5   unfair to <u>consumers</u> and thus violates the Washington CPA.  (SAC, ¶¶ 42-50.)  Plaintiff does

6   not allege that Microsoft's practices were in and of themselves anti-competitive, merely that

7   Microsoft's undisputed monopoly power allows it to perpetuate this unfair practice because

8   consumers cannot take their business elsewhere.

9       For these reasons, Microsoft's reliance on cases in which courts have found that

10  monopolies are free to choose the parties with whom they will deal is misplaced.  (Motion at

11  15:4-23.)  For example, in *Consolidated Dairy Prods. Co. v. Bar-T Ranch Dairy, Inc.*, 97

12  Wn.2d 167 (1982), the Washington Supreme Court held that being a monopoly "does not, in

13  itself, cast any cloud upon their right to set the prices at which they were willing to sell."  *Id.* at

14  178. However, this statement has no bearing on Plaintiff's allegations in this case because

15  Plaintiff is not quibbling with the price that Microsoft, as a monopolist, sets for its operating

16  systems.  Rather, Plaintiff is claiming that it is unfair for Microsoft to force her to purchase two

17  operating systems when she only needs and/or wants one.

18      Microsoft also argues that forcing Plaintiff to buy two operating systems qualifies as

19  "routine market conduct" in phasing out an older operating system in favor of a new one.

20  However, Microsoft did not phase out Windows XP in favor of Vista.  Rather, given the bleak

21  outlook for Vista sales, Microsoft clung onto Windows XP for dear life and forced consumers

22  to buy Vista in order to obtain Windows XP.  This downgrade rights scheme has endured from

23  Microsoft's introduction of Vista in January 2007 to the present, even with Windows 7

24  replacing Vista as Microsoft's most current operating system.

25      The other legal authority cited by Microsoft is similarly distinguishable, as it all

26  addresses antitrust cases involving pricing practices.

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 16
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1   Microsoft's attempt to convert Plaintiff's allegations into anti-trust and/or anti-

2   competitive claims that are more easily dismissed under the Washington applicable to such

3   claims should be rejected, and its motion to dismiss should be denied.

4   **C.    Plaintiff Has Stated A Claim For Unjust Enrichment**

5   To state a claim for unjust enrichment under Washington law, a plaintiff must allege

6   that: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an

7   "appreciation or knowledge" of the benefit; and (3) retention of the benefit by the defendant

8   would be unjust under the circumstances. *Balie Communications Ltd. v. Trend Bus. Sys. Inc.*,

9   61 Wn. App. 151, 160, 810 P.2d 12 (1991); *Kelley v. Microsoft Corp.*, 2009 WL 973368 at *5

10  (W.D. Wash. Apr 10, 2009).  *See also* Restatement (First) of Restitution § 1 (1937).  Microsoft

11  challenges all three elements.  However, the allegations in Plaintiff's Second Amended

12  Complaint plainly satisfy all three of these elements.

13      1.    Plaintiff Conferred a Benefit on Microsoft by Paying for an Operating System
             She Did Not Want or Need

14

15  Plaintiff alleges that Microsoft required her to purchase an operating system she

16  neither wanted nor needed.  (SAC, ¶¶ 4, 53.)  Plaintiff further alleges that Microsoft benefitted

17  both directly and indirectly as a result of its unfair scheme.  (SAC, ¶¶ 36-38; 53.)  In particular,

18  Plaintiff alleges that she directly conferred a benefit on Microsoft by entering into the EULA

19  and agreeing to a license for Vista.  The EULA required Plaintiff to purchase the unwanted

20  Vista operating system, resulting in increased revenues and profits for Microsoft.  Plaintiff

21  alleges that Microsoft has implemented a scheme which strictly controls when consumers may

22  purchase Windows XP and that Microsoft's scheme resulted in consumers paying monies for

23  operating systems (Vista and Windows 7) that they would not otherwise purchase.  *Id.*

24  Moreover, Plaintiff alleges that Microsoft's gross revenues include monies received for

25  purchases of Vista licenses so consumers could downgrade to Windows XP.  *Id.*   These

26

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 17
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1    allegations satisfy the first element of an unjust enrichment claim – namely, that Plaintiff

2    conferred a benefit on Microsoft.

3    Contrary to Microsoft's arguments, Plaintiff need not confer the benefit directly on

4    Microsoft.  Analyzing the common law of unjust enrichment from multiple jurisdictions with

5    elements identical to Washington law, the federal district court in *In re Cardizem CD Antitrust*

6    *Litig.*, 105 F. Supp. 2d 618 (E. D. Mich. 2000) found such arguments to be unpersuasive.

7    "Whether or not the benefit is directly conferred on the defendant is not the critical inquiry;

8    rather, the plaintiff must show that his detriment and the defendant's benefit are related and

9    flow from the challenged conduct."  *Id.* at 671.  Similarly, in *Muehlbauer v. General Motors*

10   *Corporation*, the court concluded that "an unjust enrichment claim may be premised on an

11   indirect conferral of benefits."  *Muehlbauer*,  431 F. Supp. 2d 847, 853 (N.D. Ill. 2006)

12   (analyzing unjust enrichment elements identical to a Washington claim).  The court went on to

13   find that "Plaintiffs say they purchased and leased vehicles manufactured by defendant, and by

14   paying for those vehicles they conferred a benefit upon defendant.  These allegations satisfy the

15   first prong of an unjust enrichment claim."  *Id.* at 854 (citation omitted).

16   Likewise, in *Kreidler v. Pixler,* No. C06-0697RSL, 2006 WL 3539005 (W.D. Wash.

17   Dec. 7, 2006)*,* the court found the plaintiff's allegations of unjust enrichment sufficient based

18   on indirect gain from a third party.  In *Kreidler*, the defendant had taken money from a third

19   party that was intended to pay for insurance provided by the plaintiff.  *Id.* at *9.  Here, Plaintiff

20   alleges that "Benefits were conferred on Defendants when they required Plaintiff and the other

21   member of the Class to purchase two operating systems for one PC in order to use the

22   Windows XP operating system.  These benefits include, but are not limited to: (a) the amounts

23   paid by Plaintiff and the other members of the Class for an operating system they did not want

24   to purchase. . . and (b) artificially increased or sustained sales of Windows Vista Business,

25   Windows Vista Ultimate, Windows 7 Professional, and/or Windows 7 Ultimate." (SAC, ¶ 53.)

26

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 18
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 ● FAX 206.350.3528

As in *Cardizem, Muehlbauer* and *Kriedler,* the allegations in Plaintiff's Second Amended Complaint in this case satisfy the first element of an unjust enrichment claim.

2.    <u>Microsoft is Aware that it Benefits from its Unfair Scheme</u>

Microsoft knows and appreciates that it has benefitted from mandating that consumers purchase Vista or Windows 7 in order to obtain Windows XP.  Every consumer purchase of a Vista or Windows 7 license for the purpose of downgrading to Windows XP results in more money in Microsoft's corporate coffers.   Indeed, Microsoft includes in its sales figures for Vista the licenses that have been purchased and downgraded to Windows XP. (SAC, ¶28.)

3.    <u>Microsoft Unjustly Retained Monies Paid by Consumers for Operating Systems They Did not Want</u>

It would be unjust to permit Microsoft to take advantage of Plaintiff (and millions of other consumers) by pocketing the proceeds resulting from the forced sale of Vista.  Although Microsoft claims that Plaintiff essentially "got what she paid for" because she received full value for her purchase of two operating systems, Microsoft's argument rings hollow.  While Plaintiff may have received the two operating systems that she was forced to pay for, she never wanted or needed the Vista operating system in the first place.

In summary, the allegations in Plaintiff's Second Amended Complaint are more than sufficient to plead the three elements of an unjust enrichment claim under Washington law.  *See Cardizem*, 105 F. Supp. 2d at 670-71; *Muehlbauer*, 431 F. Supp. 2d at 854; *Kriedler*, 2006 WL 3539005 at *9; *Orient Maritime Ltd. v. SSA Int'l, Inc.*, No. C05-1100L, 2005 WL 3448068, at *1 (W.D. Wash. Dec. 14, 2005).  Accordingly, Microsoft's motion to dismiss Plaintiff's unjust enrichment claim should be denied.

**D.    Plaintiff Has Stated A Claim For Declaratory Relief**

Microsoft's argument for the dismissal of Plaintiff's claim for declaratory relief rises and falls with its arguments directed to Plaintiff's CPA and unjust enrichment claims.  Microsoft does not assert that the practice that is the subject of this lawsuit has been

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 19
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

1    discontinued such that declaratory relief is unnecessary.  In fact, Microsoft has extended its

2    practice from Vista to Windows 7, all the while maintaining that its practice is lawful and

3    proper.  Therefore, Microsoft's motion to dismiss Plaintiff's independent claim for declaratory

4    relief under the Declaratory Judgment Act should and must be denied.

5                                    **V.    CONCLUSION**

6            For all of the foregoing reasons, the Court should deny Microsoft's motion to dismiss.

7    DATED this 4th day of December, 2009.

8                                                    TERRELL MARSHALL & DAUDT PLLC

9

10                                        By: /s/ Beth E. Terrell, WSBA #26759
                                            Beth E. Terrell, WSBA #26759
11                                          Email:  bterrell@tmdlegal.com
                                            Toby J. Marshall, WSBA #32726
12                                          Email:  tmarshall@tmdlegal.com
                                            Jennifer Rust Murray, WSBA #36983
13                                          Email:  jmurray@tmdlegal.com
                                            Marc Cote, WSBA #39824
14                                          Email:  mcote@tmdlegal.com
                                            3600 Fremont Avenue North
15                                          Seattle, Washington 98103
                                            Telephone:  (206) 816-6603
16                                          Facsimile:  (206) 350-3528
17
18                                          J. Paul Gignac, Admitted *Pro Hac Vice*
                                            Email:  j.paul@aogllp.com
19                                          Kiley L. Grombacher, Admitted *Pro Hac Vice*
                                            Email:  kgrombacher@aogllp.com
20                                          ARIAS OZZELLO & GIGNAC LLP
                                            4050 Calle Real, Suite 130
21                                          Santa Barbara, California 93110
                                            Telephone:  (805) 683-7400
22                                          Facsimile:  (805) 683-7401
23
24
25
26

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 20
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 ● FAX 206.350.3528

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

David R. Greifinger, Admitted *Pro Hac Vice*
Email:  tracklaw@verizon.net
THE LAW OFFICES OF DAVID R. GREIFINGER
1801 Ocean Park Blvd., Suite 201
Santa Monica, California 90405
Telephone: (310) 452-7923
Facsimile: (310) 450-4715

Howard A. Goldstein, Admitted *Pro Hac Vice*
Email:  lohag@att.net
LAW OFFICES OF HOWARD A. GOLDSTEIN
13701 Riverside Drive, Suite 608
Sherman Oaks, California 91423
Telephone: (818) 981-1010
Facsimile: (818) 981-1311

*Attorneys for Plaintiff*

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 21
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528

## CERTIFICATE OF SERVICE

I, Beth E. Terrell, hereby declare that on December 4, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jonathan M. Palmer, WSBA #26970
Email:  jmpalmer@orrick.com
Paul F. Rugani, WSBA #38664
Email:  prugani@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
701 Fifth Avenue, Suite 5700
Seattle, Washington  98104
Telephone: (206) 839-4300
Facsimile: (206) 839-4301

*Attorneys for Defendants*

DATED this 4th day of December, 2009.

TERRELL MARSHALL & DAUDT PLLC

By: /s/ Beth E. Terrell, WSBA #26759
Beth E. Terrell, WSBA #26759
Email:  bterrell@tmdlegal.com
Toby J. Marshall, WSBA #32726
Email:  tmarshall@tmdlegal.com
Jennifer Rust Murray, WSBA #36983
Email:  jmurray@tmdlegal.com
Marc Cote, WSBA #39824
Email:  mcote@tmdlegal.com
3600 Fremont Avenue North
Seattle, Washington 98103
Telephone:  (206) 816-6603
Facsimile:   (206) 350-3528

*Attorneys for Plaintiff*

PLAINTIFF'S RESPONSE TO DEFENDANT
MICROSOFT CORPORATION'S MOTION TO
DISMISS SECOND AMENDED COMPLAINT - 22
CASE NO. C09-0189 MJP

TERRELL MARSHALL & DAUDT PLLC
3600 Fremont Avenue N.
Seattle, Washington  98103
TEL. 206.816.6603 • FAX 206.350.3528